IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| RONALD OWENS WHETSTONE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>WARDEN OF PERRY )<br>CORRECTIONAL INSTITUTION, )<br>HENRY D. MCMASTER, )<br>ATTORNEY GENERAL FOR )<br>SOUTH CAROLINA, )<br>)<br>Respondents. )<br>_____) | Civil Action No. 3:08-03246-GRA-JRM<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, Ronald Owens Whetstone ("Whetstone") is an inmate at the South Carolina

Department of Corrections serving a sentence of ninety years imprisonment on five counts of

criminal sexual conduct with a minor, first degree, and one count of committing a lewd act on a child.

Whetstone filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received

by the Court on September 24, 2008. Respondents filed a return and motion for summary judgment

on March 13, 2009.[1] Because Whetstone is proceeding *pro se*, an order pursuant to <u>Roseboro v.</u>

<u>Garrison</u>, 528 F.2d 309 (4th Cir. 1975) was issued on March 16, 2009 advising him of his

---

[1]The record in this case is voluminous. Respondents have filed four bound volumes of
exhibits in support of the motion for summary judgment. Exhibit 1 ("Ex. 1") is the appendix
prepared in connection with the appeal from the denial of Whetstone's application for post-
conviction relief. Exhibit 2 ("Ex. 2") is the supplemental appendix prepared for that appeal. The
remaining exhibits (3 through 27) ("Ex. \_\_") are various other portions of the state court record.

responsibility to respond to the motion for summary judgment. Whetstone filed his response to the motion on June 24, 2009.

## Background and Procedural History

In November of 1995, the Lexington County Department of Social Services ("DSS") received a report that Whetstone's minor son and daughter were being neglected and abused. (Ex. 2, p. 136). DSS began an investigation that was joined by the Lexington County Sheriff's Department ("LCSD"). Warrants were issued and Whetstone was arrested. In April of 1996, Whetstone was indicted for three counts of criminal sexual conduct with a minor ("CSC"), and two counts of committing a lewd act on a minor ("lewd act"). In November of 1996, Whetstone was indicted for five additional CSC counts and two additional lewd act counts.

## Trial

The State called the April CSC indictments and the November indictments for trial in July of 1997. Lourie Salley, Esquire, represented Whetstone. Directed verdict was granted on two of the lewd act charges and one of the CSC charges. The jury found Whetstone guilty of the remaining charges.

## Direct Appeal

Whetstone was represented by Assistant Appellate Defender Tara S. Taggart on appeal. She filed an Anders[2] brief in the South Carolina Court of Appeals raising the following issue:

Whether the trial judge erred in failing to follow the statutory requirements for placing an alternate juror when a juror becomes ill or disabled?"

(App. 509).

_____

[2] Anders v. California, 386 U.S. 738 (1967).

Instead of filing a *pro se* brief raising additional claims, Whetstone filed a *pro se* "Petition to Substitute Appellate Counsel" in the Court of Appeals dated June 29, 1998. (Ex. 3). In that motion Whetstone asserted that Ms. Taggart should be relieved and another attorney appointed to represent him on appeal. Whetstone asserted that Ms. Taggart had not responded to his request to "file for leave of appeal" such that unspecified motions could be filed in the circuit court and that she had filed an incomplete record. (Ex. 3). The State filed a return in opposition to Whetstone's *pro se* motion. (Ex. 4).

On July 15, 1998, the Court of Appeals denied the motion to substitute counsel and extended the time for Whetstone to file a *pro se* brief of additional direct appeal issues until August 10, 1998. (Ex. 5). Instead of following the procedure to raise any additional issues, Whetstone filed a Notice of Appeal dated July 23, 1998, in the South Carolina Supreme Court seeking review of the order of the Court of Appeals denying his motion to substitute counsel. (Ex. 6). On August 12, 1998, the Supreme Court dismissed the notice of appeal pursuant to Rule 226, SCACR because the order denying the motion to substitute counsel was not a final order of the Court of Appeals. (Ex. 7). On August 24, 1998, the Court of Appeals revisited the *pro se* motion to substitute appellate counsel. The Court of Appeals construed the Notice of Appeal of its earlier order, which was an order of a single judge, as a motion to review that order by a panel of the court pursuant to Rule 224(j), SCACR. A panel of the court reviewed the notice of appeal and again denied the motion to substitute appellate counsel. An extension of time to file a *pro se* brief raising additional direct appeal issues was granted giving Whetstone until September 15, 1998 to file. (Ex. 8).

It appears that Whetstone filed a *pro se* brief, however, it is not a part of the record before this

Court.[3]  The appeal was dismissed by the Court of Appeals.  *See* <u>State v. Whetstone</u>, Unpub.Op.No. 99-UP-079 (filed February 8, 1999). (Ex. 9).  In its opinion the Court of Appeals noted that it had reviewed the *pro se* response brief filed by Whetstone.

On April 1, 1999, Whetstone filed a *pro se* "Petition for Rehearing/In Lieu of Counsels Petition" in the Court of Appeals. (Ex. 10).[4]  The petition for rehearing was denied by the Court of Appeals on April 29, 1999. (Ex. 11).

Whetstone next filed a *pro se* petition for writ of certiorari in the South Carolina Supreme Court raising the following issues:

I.     Did the Court of Appeals err in denying appellant's Petition to substitute appellate counsel?

II.    Did the Court of Appeals err in denying appellant's Petition for Appointment of Counsel to Assist in filing of petition for rehearing?

III.   Did the trial court violate petitioner's constitutional rights to due process, by denying petitioner's right to a Speedy Trial?

IV.    Did the Solicitor violate South Carolina Law, in order to deprive petitioner of his constitutional right to a speedy trial, and thus Due Process?

V.     Did the Solicitor violate Rule 5, S.C.R.Crim.P., and Brady rule?

VI.    Did the trial abuse his discretion in waiving petitioner['s] petition for Dismissal?

_____

[3]According to Whetstone, he filed his *pro se* brief on September 15, 1998 raising sixteen issues. (Ex. 10, p. 3).  However, Whetstone only identifies eight issues which he purportedly raised. (*Id.,* pp. 4-19).

[4]One of the issues raised in this petition for rehearing was the denial of a motion for a new trial by the Circuit Court based on after discovered evidence.  A copy of the lower court's order denying the motion is attached to the petition for rehearing.  Pursuant to South Carolina Procedure a motion for new trial based on after discovered evidence cannot be filed during the pendency of an appeal.

VII.      Did the trial court err in charging § 16-3-654, S.C. Code Ann. commonly known as "THE NO CORROBORATION CHARGE" and thus violate both The South Carolina Constitution and the United States Constitution?

VIII.      Did the trial court fail to undertake a DAUBERT inquiry, on the [State's] expert witness Derosset Myers?

IX.      Did the trial court err in only replaying part of testimony?

X.      Did the trial court err in denying petitioner's MOTION FOR A NEW TRIAL?

XI.      Did the trial court err in admitting expert opinion of Derosset Myers?

XII.      Did the trial court err in admitting expert opinion of Allison Defelice?

XIII.      Did the trial court err in qualifying Derosset Myers as an expert in the field of child sexual trauma?

XIV.      Did the trial court fail to undertake a DAUBERT inquiry, on the [State's] expert witness Allison Defelice?

XV.      Did the Solicitor use vindictiveness, and other forms of [prosecutorial] misconduct, in order to deny petitioner of a timely and fair trial?

XVI.      Did the trial court err in overruling defense[] counsel's objection, to [Derosset Myers['] opinion?

XVII.      Did the trial court err in failing to instruct the jury to disregard question and answer?

XVIII.      Did the trial court err in allowing witness to leave the witness stand before the end of direct examination?

IXX.      Did any combination of the questions "I" through "XVIII" of this petition deprive the petitioner of a fast and fair trial?

(Ex. 12, pp. 1-3).

The petition for writ of certiorari was denied on December 6, 1999, (Ex. 13).

## Post Conviction Relief ("PCR")

**1. PCR I**

Whetstone filed a *pro se* PCR application on April 5, 2000 raising numerous issues. (App. 518). He filed an "Addenda to Application for Post-Conviction Relief" on August 2, 2000 asserting additional claims. (Ex. 15). He filed a "Second Addenda to Application for Post-Conviction Relief" on November 9, 2000. (Supp.App. 1). An evidentiary hearing was held on August 30, 2001. Whetstone was represented by Robert Masella, Esquire. (Ex. 16). On October 26, 2001, the PCR court filed an order which denied Whetstone's request for discovery pursuant to S.C. Code Ann. § 17-27-150 because Whetstone had failed to show good cause for expansion of the record. The court also summarized Whetstone's claims as follows:

1.  The State violated Applicant's constitutional right to fast and speedy trial, and thus due process.

2.  Applicant asserts material issue of fact that was not known to applicant, or defense counsel, at time of trial, and that the actions by officers of the Court have denied this Applicant to be fully heard....

3.  Applicant was denied constitutional right to effective assistance of appellate counsel, for counsel's failure/refusal to raise issues of legal merit.

4.  Applicant was denied constitutional right to effective assistance of appellate counsel, for counsel's refusal to raise after discovered evidence.

5.  Applicant was denied constitutional right to effective assistance of appellate counsel, for counsel's filing of incomplete record on appeal.

6.  Applicant was denied constitutional right to effective assistance of trial counsel, for counsel's failure to prepare.

7.  Applicant was denied constitutional right to effective assistance of trial counsel, for counsel's failure to contact and/or call witnesses.

8.      Applicant was denied constitutional right to a fair and impartial trial, due to prosecutorial misconduct of withholding evidence.

9.      Applicant was denied constitutional right to fair and impartial trial, due to prosecutorial misconduct of violations of Rule 407, SCRCP.

10.     Applicant was denied constitutional right to a fair and impartial trial, due to abuse of discretion.

(Ex. 16).

Whetstone, through counsel, filed a motion to amend the judgment pursuant to Rule 59(e), S.C.R.Civ.P. (Ex. 17). The State opposed the motion. (Ex. 18). The motion was denied on December 20, 2001. (Ex. 19).

Apparently venue of the PCR case was transferred from Lexington to Richland County in August of 2002. (Supp.App. 21). On July 3, 2003, Whetstone filed a "Third Assertion for Speedy Remedy and Third Addendum to Post-Conviction Application." (Supp.App. 17). Whetstone filed a "Fourth Amendment to Post-Conviction Application" dated November 14, 2003. (App. 538, Supp.App. 17).

An evidentiary hearing was held before the Honorable L. Casey Manning on March 25, 2004. Whetstone was again represented by Mr. Masella. Mr. Salley was called as a witness by the State. Whetstone testified in his own behalf and presented testimony from Hollida Wakefield, a forensic psychologist who is an expert in "witness interviewing, investigation regarding alleged sexual abuse, and behavior of children in those situations." (App. 675). At the end of the hearing Judge Manning took the case under advisement. An order of dismissal was filed on July 21, 2004, which addressed sixteen different issues raised by Whetstone. (App. 748).

Counsel moved to "Amend or Alter Pursuant to Rule 59(e) SCRCP" asserting that the PCR court had failed to address nine issues raised by Whetstone. (Ex. 20). Attached to Whetstone's

<u>Roseboro</u> response is a copy of a *pro se* "Motion to Alter or Amend Judgment and Supplemental Application" dated June 17, 2005. Also attached to the <u>Roseboro</u> response is a *pro se* "Listing of Issues (and Sub-Issues)" dated February 1, 2006 stating thirty issues. A hearing was held before Judge Manning on April 4, 2006. (App. 764). Mr. Masella continued to represent Whetstone although he filed a motion to be relieved prior to the hearing. (App. 767).

During the hearing Whetstone provided the court with a second listing of forty issues which apparently was a compilation of all the issues raised in his PCR and four addenda. (App. 767).

On April 17, 2006, the PCR court issued an order relieving Mr. Masella from further representation (copy attached to <u>Roseboro</u> response) and an order granting in part the Rule 59(e) motion. The court found that several issues raised by Whetstone were not properly before the court because they were raised *pro se* after Mr. Masella had been appointed.[5] The court also indicated that it had considered, and denied, all allegations of ineffective assistance of trial counsel because Whetstone had not shown error and/or prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). (Ex. 1 pp.772-773 and Ex.21). *See* discussion below.

An appeal was perfected by the South Carolina Commission on Indigent Defense. The petition for writ of certiorari raised a single issue:

> Whether defense counsel was ineffective in failing to call an expert witness to rebut the State's expert witness?

(Ex. 2).

---

[5]Judge Manning did not specifically state these issues. The order identified the issues as "one (1), two (2) including 2a-21, nine (9), twenty-seven (27), twenty-eight (28), twenty-nine (29) and thirty (30)." (App. 772). It appears that the court was referring to the list of 40 issues that was produced by Whetstone at the hearing on April 4, 2006. However, that list of issues is not a part of the record before this Court.

The State filed a return. (Ex. 23).  The petition for writ of certiorari was denied on March 7, 2008. (Ex. 24).  The Remittitur was returned on March 25, 2008. (Ex. 25).

**2.  PCR II**

According to Respondent, Whetstone filed a second PCR on July 3, 2008, which alleged ineffective assistance of counsel, ineffective assistance of appellate counsel, trial judge abuse of discretion, and prosecutorial misconduct. (Res.Mem., p. 21).  The PCR application is not a part of the record.  The State moved for summary dismissal based on South Carolina procedure. (Ex. 26). A conditional order of dismissal was entered on September 25, 2008, finding that the application was successive and in violation of the state statute of limitations. (Ex. 27).  At the time of the filing of the return in the present case, a final order had not been issued. (Res.Mem., p. 22).

## Grounds for Relief

In his present petition, Whetstone asserts that he is entitled to a writ of habeas corpus on the following grounds:

**GROUND ONE:**     Petitioner was deprived his constitutional Right to a
Fast and Speedy Trial.

> **SUPPORTING FACTS:** After being incarcerated, the Petitioner made several formal demands for a "Fast and Speedy" trial. Those demands were properly filed with the South Carolina General Sessions Court having jurisdiction over the pending matters, and were served properly upon the Solicitor prosecuting the same matters. Moreover, Petitioner verbally requested same before several state judges with no resolution, and at no time did Petitioner relinquish his demand to exercise that fundamental Constitutional Right.

**GROUND TWO**:     The trial judge abused his discretion.

> **SUPPORTING FACTS:** (a) By allowing a state's witness, (C Whetstone) to leave the witness-stand before the end of direct examination, the judge actually took custody of the witness and sent the witness to a sequester room where other sequestered witnesses could, and were likely to help conform C's testimony to what the answers and testimony the state wanted and needed to gain a conviction.

(b) By overruling Defendant's "objection" to a question put to one of the State's "expert witnesses", the judge in fact allowed that witness (Allison Defelice) to answer the Solicitor's question which invaded the sole province of the jury, as it was a comment (opinion as an expert) upon the ultimate question of innocence or guilt.

(c) By excluding evidence of prior "false allegations" of the same nature made by the same two alleged victims.

(d) By sua sponte waiving the Defendant's objections related to the violation of Rule 3, SCRCrimP mandates toward disposition of procedural requirements associated with the Defendant's pre-trial rights. The judge summarily waived the objections due to them not being made pre-trial and refused to rule of the merits. And for the same reasons summarily denied Defendant's objections based on being denied his Constitutional demand to exercise his Right to a "Fast and Speedy Trial." Rule 3, SCRCrimP, were established to be interwoven with a criminal Defendant's right to a "Fast and Speedy" disposition of trial matters.

(e) By the various abuse of judicial discretion made in the trial at bar, Petitioner was deprived of his rights to a (a) "Fair and Impartial Trial"; (b) Procedural and Substantive Due Process; and (c) Equal Protection.

(f) Any single issue presented within the category titled "Abuse of Discretion" standing alone, are sufficient to undermine confidence in the trial outcome. However, the "cumulative" effect more than justifies the vacation of petitioner's convictions and sentences based on the magnitude of constitutional deprivations.

**GROUND THREE:** Ineffective Assistance of trial counsel.

**SUPPORTING FACTS:** (a) Trial counsel was ineffective for failing to move for a Daubert hearing regarding the reliability of the underlying science that Derosset Myers used to support testimony.

(b) Trial counsel was ineffective for failing to move for a Daubert hearing regarding the reliability of the underlying science that Betsy Baker used to support testimony.

(c) Trial counsel was ineffective for failing to move for a Daubert hearing regarding the reliability of the underlying science that Allison Defelice used to support testimony.

(d) Trial counsel was ineffective for failing to raise the biases of Betsy Baker.

(e) Trial counsel was ineffective for failing to object to the improper "bolstering" testimony of Derosset Myers.

(f) Trial counsel was ineffective for failing to meaningfully prepare for the trial.

(g) Trial counsel was ineffective for failing to contact and/or call witnesses.

(h) Trial counsel was ineffective for failing to object to the trial judge's use of an unconstitutional "no corroboration" jury charge based on S.C. Code Ann. § 16-3-657.

(i) Trial counsel was ineffective due to an actual "conflict of interest".

(j) Trial counsel was ineffective for failing to raise the affirmative defense of "Double jeopardy", and thus waived the Defendant's Constitutional protections against multiple punishments and convictions.

(k) Trial counsel was ineffective for failing to insure that his advice and explanations pertaining to the guilty plea offered was properly expressed and completely understood by the Defendant.

(l) Trial counsel was ineffective for failing to object to the imposition of the Solicitor's sentence recommendation based on the "vindictive nature" of those recommendations. Such recommendations were the result of defendant exercising his Constitutional trial rights.

(m) Trial counsel was ineffective for failing to argue (<u>pretrial</u>) the Defendant's position regarding his personal demands for a "Fast and Speedy Trial". Inversely, counsel waited to argue that issue in conjunction with his motion for a directed verdict – at the close of trial evidence.

(n) Trial counsel was ineffective for failing to put forth an expert witness to rebut the State's expert witness.

**GROUND FOUR:** Prosecutorial Misconduct.

**SUPPORTING FACTS:** (a) The actions and questions used by the Solicitor with Derosset Myers were improper. Thus, the Solicitor failed to hold her oath and duties as defender of the State, which included protecting the Defendant in a criminal matter.

(b) Petitioner was denied his Constitutional Right to a "fair and impartial trial" due to the misconduct of violating Rule 407, SCRCP.

(c) Petitioner was deprived his Constitutional Right to a "fair and impartial trial" due to prosecutorial misconduct of withholding [material] evidence.

(d) Petitioner was deprived due process and equal protection due to the Solicitor

undertaking prohibited practices before the Grand Jury, thereby also calling into question the validity of indictments.

(e) Petitioner was denied Constitutional Rights to Equal Protection, Due Process, and Effective Assistance of Counsel, due to the intentional actions of the Assistant Solicitor. Such as withholding material evidence prior to trial, seeking testimonial opinions from expert witnesses upon the ultimate issue of guilty or innocense, etc., etc., thereby accumulating to devastate the defendant's possibility for a fair and impartial trial...

(f) The Solicitor egregiously used Rule 407, SCRCP, and violated Rule 3.3(a)(1), SCRCimP, in order to cover up the manipulation of facts and withholding of evidence.

(g) Petitioner was denied due process and equal protection by the State's (Solicitor's) use of the colorable S.C. Code Ann § 17-27-150 in order to deny discovery [post-trial].

**GROUND FIVE**: Ineffective Assistance of Appellate Counsel.

**SUPPORTING FACTS:** (a) Appellate Counsel was ineffective for failing to raise the objections made and preserved through the trial and appellate review relevant to the testimony and opinion of Derosset Myers.

(b) Appellate counsel was ineffective for failing to raise the objections made and preserved through the trial for appellate review, relevant to the testimony of Betsey Baker.

(c) Appellate counsel was ineffective for failing to raise objections made and preserved through the trial, relevant to the testimony of Allison Defelice, and in particular, the comments made by Defelice upon the "ultimate issue of guilt or innocence". [Invading the sole province of the jury]

(d) Appellate counsel was ineffective for failing to raise violations related to petitioner's right to a "Fast and Speedy trial".

(e) Appellate counsel was ineffective for failing to raise the newly discovered medical/scientific evidence that easily satisfied a <u>clear and convincing</u> standard of evidence material to innocence or guilt, and which had never been heard before a jury or judge.

(f) Appellate counsel was ineffective for failing to raise issues of legal merit upon the only appeal as-of-right. Counsel negated that Constitutional duty and submitted a "no (Legal) Merits" Brief to the Court of Appeals based on <u>Anders v. California</u>.

(g) Appellate counsel was ineffective for failing to file a complete and accurate Record on Appeal. Counsel based the Anders appeal entirely upon indictments not associated with the convictions and sentences for which an appeal-of-right was taken. And therefore, Petitioner was deprived an appeal upon the six (6) indictments whereby he was convicted and sentenced.

**GROUND SIX:** Cumulative Constitutional Deprivations.

**SUPPORTING FACTS:** (a) Based upon the "cumulative effects" of the trial errors made by the Judge, defense counsel and prosecutor, a total negation of reasonable confidence in the outcome of the trial becomes glaringly obvious. Whereas the Petitioner declares his actual innocence and has been deprived the Constitutional Rights to a [1] "fair and impartial trial"; [2] "a fair appeal-of-right"; [3] "effective assistance" of both trial and appellate counsels, and [4] to confront and thoroughly cross-examine the witnesses against him, and have meaningful compulsory process to obtain witnesses and evidence in his favor, etc.

(b) Petitioner has been deprived due process and equal protection, in that, material issues of facts exist which are exonerating and were not known at the time of trial. Therefore, petitioner has not been "fully heard" in his defense or on appellate review. This deprivation continues based on the actions of officers of South Carolina Courts. (Concerning material issues of fact, S.C. Const. Art. 1, § 14.)

(c)The criminal matter of <u>The State vs. Whetstone</u> amounts to a manifest constitutional injustice, due to the Petitioner's protection against Double Jeopardy being waived or abandoned outside personal - voluntary, knowing and intelligent decisions related to the protections.

### Discussion

Since Whetstone filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

\* \* \*

[A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

## A. Cognizable Claims

The present petition asserts a number of claims not cognizable in a habeas action. A state prisoner may be granted relief by this Court only if he shows that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A claim is cognizable only if it alleges such a violation. Rose v. Hodges, 423 U.S. 19 (1975). Habeas relief protects against

14

illegal conduct and is not a means of judicial clemency. <u>Evans v. Muncy</u>, 916 F.2d 163 (4th Cir. ), *cert. denied*, 498 U.S. 927 (1990). Generally, violations of state law or procedure which do not infringe upon specific federal constitutional protections are not cognizable under § 2254. <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991). Likewise, infirmities in state post-conviction relief proceedings cannot serve as the basis for federal habeas relief. <u>Bryant v. Maryland</u>, 848 F.2d 492 (4th Cir. 1988).

In his second ground for relief, Whetstone alleges that the trial judge abused his discretion in evidentiary rulings, trial management, and by summarily rejecting his argument that the indictments should be dismissed because the Solicitor did not comply with Rule 3, SCRCrimP relating to the timely disposition of arrest warrants. These are all matters of state law and procedure which are not cognizable. <u>Estelle v. McGuire</u>, *supra;* <u>Lucas v. McBride</u>, 505 F.Supp.2d 329, 355 (N.D.W.Va. 2007) (abuse of discretion in not granting continuance not cognizable); and <u>Stephenson v. Wannamaker</u>, 2002 WL 31996001, *13 (D.S.C. June 28, 2002) (abuse of discretion in admission of testimony not cognizable). Also, in Ground 4, Whetstone alleges improper conduct on the part of the Solicitor in presenting evidence of an expert witness at trial, before the grand jury, and violations of Rule 3, SCRCrimP and "Rule 407, SCRCP."[6] Again, all claims relate to matters of state law and procedure which are not cognizable.

Whetstone also alleges in Ground 4(g) that the Solicitor used S.C.Code Ann. § 17-27-150 to deny him due process and equal protection. This statute provides for discovery in PCR proceedings "to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." As discussed above, Whetstone moved for discovery in the PCR

---

[6]There is no rule 407 in the South Carolina Rules of Civil Procedure. The undersigned assumes that Whetstone is referring to Rule 407, SCACR which provides the rules of professional conduct for attorneys.

proceeding, the State opposed the motion, and it was denied. An alleged irregularity in the PCR process is not cognizable.

In order to obtain relief on three non-cognizable claims, Whetstone would have to show that a substantive error occurred in circumstances impinging "fundamental fairness." <u>Grundler v. North Carolina</u>, 283 F.2d 798, 802 (4th Cir. 1960). Whetstone has shown no error. These claims were essentially raised in his *pro se* petition for writ of certiorari to the South Carolina Supreme Court after the Court of Appeals dismissed his direct appeal. The claims were then rejected by the South Carolina Supreme Court.

With respect to a failure to comply with state procedural statutes, Whetstone would have to show that the failure to comply constituted a "fundamental defect which inherently results in a complete miscarriage of justice." <u>Hailey v. Dorsey</u>, 580 F.2d 112, 115 (4th Cir. 1978), *cert. denied*, 440 U.S. 937 (1979). Whetstone has not made this showing.

**B. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1. Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B)(i)  there is either an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his

conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and <u>Blakeley v. Rabon</u>, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. <u>Simmons v. State</u>, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[7] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground

---

[7]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. <u>See</u> discussion below on procedural bypass.

18

relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." <u>Joseph v. Angelone</u>, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, <u>Patterson v. Leeke</u>, 556 F.2d 1168 (4th Cir. 1977) and <u>Richardson v. Turner</u>, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* <u>Rose v. Lundy</u>, *supra*.

### 2. Procedural Bypass[8]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

---

[8]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson,

501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d

1350, 1354 n. 1 (4th Cir. 1996).  Further, the claim of cause must itself be exhausted.  Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000).  Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997).  To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

## 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents.  Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and prejudice or actual innocence.  If not raised by petitioner, the court need not consider the defaulted claim.  Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

In Ground 3, Whetstone alleges various claims that his trial attorney was ineffective. In Ground 5, he alleges that his attorney was ineffective on direct appeal in several respects.  However, the only claim of ineffective assistance of counsel that was raised in the petition for writ of certiorari relates to trial counsel's failure to present an expert to rebut the State's expert witness (Ground 3(n) of the present petition).  All other claims of ineffective assistance of counsel are procedurally barred.

## C. Merits

### 1. Speedy Trial

Whetstone asserts that his right to a speedy trial was violated. As noted above, DSS received a report of abuse in November of 1995, he was arrested November 15, 1995, and he has been in custody since that date. He made his first written request for a speedy trial in March of 1996. (Ex. 2, p. 50). Whetstone was first indicted in April of 1996. He made other written speedy trial requests. (Ex. 2, pp. 51 and 73). A hearing was held in the Family Court on September 3-4, 1996. (Ex. 2, p. 112). Additional indictments were returned in November of 1996. The trial began on July 21, 1997.

According to the Sixth Amendment to the United States Constitution, "the accused shall enjoy the right to a speedy and public trial." The Fourteenth Amendment extends this right to state court trials. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

In Barker v. Wingo, 407 U.S. 514, 530-32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court adopted a four-part balancing test to evaluate speedy trial violation claims: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant timely asserted the right to a speedy trial; and (4) whether the defendant has suffered prejudice as a result of the delay. Under this test, the petitioner must show "that on balance, the four separate factors weigh in his favor." United States v. Thomas, 55 F.3d 144, 148 (4th Cir.1995). No one factor is determinative and all four factors must be considered together. Barker, 407 U.S. at 533. Additionally, the first factor (length of delay) acts as a triggering mechanism, i.e., if the delay is within normal limits, there is no need to consider the remaining factors. Generally, a delay of over one year is presumed to be presumptively prejudicial. Doggett v. United States, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

There apparently was no hearing on Whetstone's *pro se* speedy trial motions so the record is largely undeveloped on the issue. His trial took place more than one year after the initial indictments, and less than one year after the second indictments.

No specific reason has been given for the delay by the State. The issue was addressed during the PCR process. Whetstone testified that he was originally represented by Michael Ellisor, Esquire, of the Public Defender's Office. When Mr. Ellisor left the office, Elizabeth Fullwood, Esquire, assumed representation. Apparently a conflict arose, and Mr. Salley was appointed to represent Whetstone in November of 1996. (Ex. 1, pp. 596 and 690). The changes of attorneys undoubtedly was partially responsible for the delay in trial. Another probable factor was the timing of the Family Court hearing which resulted in the termination of Whetstone's parental rights. That hearing was held in September of 1996. (Ex. 2, p. 113).

Whetstone asserts that he was prejudiced by the delay in two ways. First, he argues that his children's stories changed and became embellished as time passed. These changes occurred as the children underwent counseling after Whetstone's arrest. Mr. Salley was able to effectively cross-examine the victims on changes in their stories. (Ex. 1, pp. 141-152 and 178-174). Thus, the changes in stories gave the defense ample ammunition for impeachment. *See* <u>Snipes v. Reynolds</u>, 2008 WL 4457895, *17 (D.S.C.) (no prejudice under <u>Baker v. Wingo</u> analysis in child abuse case where defendant was able to cross-examine victim about inconsistencies in story).

Whetstone also claims prejudice because he was unable to locate a witness, David C. Turney ("Turney"). Turney worked with Whetstone and lived in the same trailer park with him at the time of the incidents in question. He testified at the Family Court hearing that Whetstone and his children appeared to have a normal relationship. (Ex. 2, p. 138). The PCR court had the transcript of the

Family Court hearing before it. At trial, the defense presented testimony from Molly Gunter, who basically testified that Whetstone and his children had a normal relationship. (Ex. 1, p. 31).[9] Whetstone's father gave similar testimony. (Ex. 1, p. 390).

The PCR court dismissed the speedy trial claim on the basis of strategy by Mr. Salley. Mr. Salley testified at the PCR hearing that when he was appointed, he was preparing for a capital murder case and needed extra time to prepare. Further, he testified that he retained an expert, Dr. Jonathan Vann to help him prepare the case and cross-examine the State's expert witnesses. Dr. Vann had to review the file and reports of those experts. Mr. Salley also testified that he advised Whetstone that pushing to advance the trial date would not be wise strategy. (Ex. 1. pp. 593-600).

The PCR court found "the testimony of trial counsel credible in that he made the strategic decision not to support a motion for a speedy trial." (Ex. 1, p. 752). The undersigned concludes that the State Court's determination was not contrary to, or an unreasonable application of, clearly established federal law.

## 2. Brady Violation

At the PCR hearing, Whetstone testified that the Solicitor withheld contact information of a witness, Kathy Knoten. Ms. Knoten did not testify at trial. Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), a due process violation occurs if the State, after a discovery request from the defendant, withholds exculpatory evidence that, if disclosed could reasonably have altered the proceedings.

---

[9]Whetstone made no attempt to introduce Turney's Family Court testimony by way of the transcript at the criminal trial.

It does not appear that Mr. Salley asked for the information about Ms. Knoten until the date of trial, and that the State refused to produce it arguing that it was not subject to disclosure. (Ex. 1, pp. 713-715). It is unclear what Ms. Knoten would have testified to if called at trial. Whetstone has not shown that having Ms. Knoten's contact information prior to trial would have produced a different result. In any event, the PCR court examined the record and concluded as fact that the State did not have the contact information of Ms. Knoten. (Ex. 1, p. 757).

### 3. After Discovered Evidence

Whetstone asserts that the PCR court improperly denied him a new trial based on newly discovered evidence. At the PCR hearing, he testified that he was diagnosed with having a sexually transmitted disease in September of 1994 and also in July of 1997 when he was transferred to SCDC after his conviction. (Ex. 1, p. 705).

The existence of "after-discovered evidence" may entitle a defendant to a new trial in state court or allow for a successive PCR in state court. Under South Carolina procedure, a convicted defendant may move "for a new trial based on after-discovered evidence...within a reasonable period after the discovery of the evidence." Rule 29(b), S.C.Crim.P. To be successful the party seeking the new trial based on after-discovered evidence must show that the evidence: (1) is such as would probably change the result if a new trial was had; (2) has been discovered since the trial; (3) could not by the exercise of due diligence have been discovered before the trial; (4) is material to the issue of guilty or innocence; and (5) is not merely cumulative or impeaching. Hayden v. State, 278 S.C. 610, 299 S.E.2d 854 (1983). In assessing a motion for a new trial based on after discovered evidence, the Court must assess the credibility of the new evidence. If it is not credible, the movant cannot satisfy the first prong of the above test, i.e., the evidence would probably result in a different result

at the new trial. <u>Johnson v. Catoe</u>, 345 S.C. 389, 548 S.E.2d 587 (2001).

The PCR court found that Whetstone was not entitled to a new trial because he was aware of the diagnosis in September of 1994, prior to his trial. (Ex. 1, p. 753). Further, since this claim arose in the PCR process, it was decided as a matter of state law and procedure.

### 4.     Ineffective Assistance of Trial Counsel

In the petition for writ of certiorari following denial of the application for post-conviction relief, Whetstone asserted that his trial counsel was ineffective because he did not call an expert to rebut the testimony of the State's experts. (Ex. 22). At trial the State presented the testimony of Dr. Derosset Myers, Jr., a clinical child psychologist specializing in the field of child sexual abuse. (Ex. 1, p. 222). The State also offered testimony from Dr. Elizabeth Lynn Harvey Baker, a pediatrician who is board certified in forensic medicine and specializes in the field of child abuse (Ex. 1, p. 271), and Dr. Allison Deflice, a clinical psychologist and the Director of the Williams S. Hall Psychiatric Institute. (Ex. 1, p. 318). The record shows that Mr. Salley objected to some of their testimony and thoroughly cross-examined each witness.

At the PCR hearing, Whetstone presented the testimony of Hollida Wakefield, a forensic psychologist. (Ex. 1, p. 653). She had reviewed the record pertaining to the victims and concluded, based on the circumstances, that outside influence would have contaminated their memories to the extent that they no longer had an independent recollection of the events. She offered a critique of the State's expert witnesses, including their use of unacceptable interview techniques. Based on her testimony, Whetstone argued that trial counsel was ineffective for not calling a witness to rebut the State's expert.

At the PCR hearing, Mr. Salley testified that he retained Dr. Venn with whom he consulted extensively prior to trial. Even though Dr. Venn was sequestered during the trial, Mr. Salley advised Dr. Venn of the testimony of the State's witnesses. According to Mr. Salley, "we considered right up to the last minute putting Dr. Venn on the stand." However, based on admissions made by the State's witnesses, it was decided as a matter of trial strategy not to call Dr. Venn. (Ex. 1, pp. 580-584).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

The PCR court found Ms. Wakefields' testimony relating to interviewing witnesses and investigations of child sex abuse to be "compelling and credible." However, the court also found that her testimony as to what counsel should have done, i.e., calling a rebuttal witness, to be not credible. The court concluded that counsel had a valid strategic reason not to call Dr. Venn.

In <u>Sexton v. French</u>, 163 F.3d 874, 885 (4th Cir.1998), *cert. denied,* 528 U.S. 855, 120 S.Ct. 139, 145 L.Ed.2d 118 (1999), the Court differentiated the types of decisions which must be made by criminal defense counsel.

There are essentially two categories of decisions made by a criminal defendant's trial

counsel: those decisions, deemed "personal," that must be made with the defendant's consent and those that may be made without the defendant's consent. Decisions that may be made without the defendant's consent "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." The decisions that must be made with the defendant's consent include the decision to enter a guilty plea, the decision to waive a jury trial, the decision to pursue an appeal, and, as noted in Part III of this opinion, the decision to testify at trial. (Citations omitted).

Tactical decisions involving trial strategy include such matters as stipulation of a witness as an expert, lines of questioning on cross-examination, United States v. Caldwell, 201 F.3d 437 (4th Cir.1999) (Table), moving to suppress a confession, Sexton v. French, 163 F.3d at 885 ("The decision whether to file a ... motion to suppress a confession is a classic tactical decision.") and objecting to evidence, Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir.1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456(1992).

When considering a claim of ineffective assistance of counsel based on tactical decisions "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689. Thus, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, 844 F.2d 170 (4th Cir.1991).

Under this standard, counsel's decision not to call Dr. Venn as a rebuttal witness was neither error nor prejudicial.

### 5. Cumulative Error

Whetstone contends that all his allegations of error, considered cumulatively, were

tantamount to the denial of a fair trial which resulted in a miscarriage of justice. Such a claim does not warrant habeas relief. Having found that none of the issues properly raised by Whetstone amounted to error, he cannot aggregate them to form a constitutional violation. *See* <u>Fisher v. Angelone</u>, 163 F.3d 835, 852-853 (1998), *cert. denied*, 526 U.S. 1035 (1999) (holding that various claims of ineffective assistance of counsel, like claims of trial error, would not entitle petitioner to relief because a cumulative error analysis would apply only to the effect of those matters actually determined to be constitutional error and not the cumulative effect of all matters alleged or deemed deficient).

## Conclusion

Many of the claims in the present petition were procedurally defaulted in state court. Petitioner has not shown that the state court's determinations of his claims properly before this Court were contrary to, or an unreasonable application of, clearly established federal law. It is therefore, recommended that Respondents' motion for summary judgment be **granted** and the petition **dismissed**.

_____
Joseph R. McCrorey
United States Magistrate Judge

February 5, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

31

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

901 Richland Street

Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).